IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NSI NURSING SOLUTIONS, INC.** | : | CIVIL ACTION |
| | : | |
| v. | : | NO.   17-1613 |
| | : | |
| **VOLUME RECRUITMENT SERVICES, LLC, et al.** | : | |
| | : | |

### MEMORANDUM OPINION

**SCHMEHL, J.**    /s/ JLS                                                                                         JUNE 18, 2018

This copyright infringement action was originally commenced by Plaintiff on March 1, 2017 in the Court of Common Pleas of Lancaster County, then removed by Defendants to this Court. Following the start of discovery, Plaintiff, on May 4, 2017, registered the materials it claimed were subject to copyright.  On May 5, 2017, Plaintiff filed an Amended Complaint. On February 9, 2018, Plaintiff filed a Second Amended Complaint. Presently before the Court is Defendants' motion to dismiss counts I, IV, VII and VIII of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must plead sufficient factual allegations that, taken as a whole, state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). *Iqbal* explained that

1

although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 678, 685. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); see also *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly*, 550 U .S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two part analysis: First, the factual and legal elements of a claim should be separated–the district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief: a complaint has to "show" such entitlement with its facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Second Amended Complaint alleges that Plaintiff NSI Nursing Solutions, Inc. ("NSI"), is a "nationwide firm that focuses on high volume recruitment and retention of

registered nurses for hospitals and healthcare systems." (Second Am. Compl. ("SAC") ¶ 1.) "The services provided by NSI are unique in the staffing industry." (SAC ¶ 2.) NSI has developed a proprietary system that enables it to rapidly and permanently fill high volumes of nursing positions. (SAC ¶¶ 17-19.) NSI's proprietary system includes its Copyrighted Works (SAC ¶ 20) and its Trade Secrets (SAC ¶ 21.) Using these methods and materials, NSI has developed over the past 17 years, a unique and valuable reputation in the niche market of high volume registered nurse recruitment and retention. (SAC ¶ 23.)

Defendants Marco Colosi ("Colosi") and Debra Pollick ("Pollick") are former employees of NSI. (SAC ¶ 4.) The SAC alleges that Colosi and Pollick have conspired to unlawfully compete with NSI by, *inter alia*, copying NSI's Copyrighted Works and Trade Secrets, either exactly or with minor modifications. (SAC ¶¶ 39, 40.) To advance this conspiracy to unlawfully compete with NSI, Colosi and Pollick formed Defendant Volume Recruitment Services, LLC ("VRS"). (SAC ¶¶ 44, 45.) NSI alleges that Defendants' unlawful competition includes:

• Making and maintaining copies of NSI's intellectual property without NSI's authorization (SAC ¶¶ 39 D and E);

• Using infringing versions of the Copyrighted Works without NSI's authorization (SAC ¶¶ 39F and G); and

• Using confusingly similar documents and using NSI's metrics to deceive consumers into believing VRS is affiliated with NSI (SAC ¶ 45).

NSI asserts the following claims: Count I – Breach of Fiduciary Duty against Colosi; Count II – Breach of Contract against Colosi; Count III – Tortious Interference

with Contractual Relations against Pollick; Count IV – Copyright Infringement against all Defendants; Count V – Misappropriation of Trade Secrets against all Defendants; Count VI – False Advertising against all Defendants; Count VII – Unfair Competition against all Defendants; Count VIII – Tortious Interference with Prospective Contractual Relations against all Defendants; and Count IX – Civil Conspiracy against all Defendants.

Defendants first seek dismissal of NSI's claim for breach of fiduciary duty (Count One) on the basis that the claim is time-barred by Pennsylvania's two-year statute of limitations. That count alleges:

> 56. As the President of NSI, Defendant Colosi owed a fiduciary duty to NSI.
>
> 57. Defendant Colosi breached that fiduciary duty during his time as President by:
>
> A. Maintaining copies of the Copyrighted Works for the purpose of competing with NSI;
>
> B. Maintaining copies of the Trade Secrets for the purpose of competing with NSI; and
>
> C. Removing or destroying the executed copies of Defendant Colosi's Noncompetition and Confidentiality Agreement from NSI's files.

(SAC ¶¶ 56-57.)

Under Pennsylvania law, tort actions, including breach of fiduciary duty, are subject to a two (2) year statute of limitations. 42 Pa. C.S. § 5524; *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005). However, "it is well-established that Pennsylvania law recognizes a "discovery rule" exception to the statute of limitations which delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." *Beauty Time, Inc.*

4

*v. VU Skin Systems, Inc.,* 118 F.3d 140, 144 (3d Cir. 1997). The burden is on NSI to establish it is entitled to rely on the discovery rule.

Defendants argue that since the SAC alleges that Colosi resigned from NSI in July of 2013 (SAC ¶ 34), any breaches of fiduciary duty by him had to have occurred prior to that date. Since NSI did not commence this suit until March 1, 2017, Defendants contend that this count is time-barred. NSI contends that it did not learn of Colosi's alleged transgressions until 2016, when he began operating VRS with Pollick, and therefore is entitled to rely on the discovery rule.

Discovery may reveal that NSI did not learn that Colosi maintained copies of NSI's Copyrighted Works and Trade Secrets or that Colosi removed and destroyed executed copies of his Noncompetition and Confidentiality Agreement from NSI's files until sometime in 2016 when Colosi and Pollick allegedly began to use these copies to engage in unfair trade practices while operating VRS. If NSI did not have knowledge of Defendants' alleged actions until 2016, the breach of fiduciary claim would be timely. Therefore, the motion to dismiss will be denied with respect to NSI's breach of fiduciary duty claim with leave to renew as part of a motion for summary judgment.

Defendants next argue that since NSI's copyrighted materials were not registered until May 4, 2017, NSI's Count IV claim for any copyright infringement that occurred prior to that date must fail. The Court does not agree.

"Under the current copyright regime, an expressive work enjoys copyright protection even before registration; registration is merely a prerequisite to bringing an infringement action." *K-Beech, Inc. v. Doe*, No. 11-7083, ECF 9, (E.D. Pa. Jan. 30, 2012) (Schiller, J.)(citing *Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 619

(9th Cir. 2010)). Therefore, NSI possessed copyright protection of its Copyrighted Works even prior to registration. The act of registering the Works on May 4, 2017 merely allowed NSI to pursue a claim for copyright infringement.

Defendants also seek dismissal of NSI's claim for unfair competition. That claim asserts:

> 94. Defendants have unlawfully competed with NSI by taking actions designed to cause confusion in the marketplace as to the origin, sponsorship and approval of VRS' services, by:
>
> A. Encouraging consumer confusion using the Colosi name;
>
> B. Using NSI identical vendors to NSI, such as Travel Time;
>
> C. Using NSI's Copyrighted Works;
>
> D. Using NSI's success statistics as though they were completed by VRS
>
> E. Using NSI's Trade Secrets;
>
> F. Using the same telephone number used by Defendant Colosi as the President of NSI to conduct business as YRS; and
>
> G. Using trade dress and marketing materials that look similar or identical to NSI's trade dress and marketing materials. RS;

(SAC ¶ 94.)

The general scope of copyright is specified in 17 U.S.C. §106, which states that "the owner of copyright under this title has the exclusive rights ... to reproduce the copyrighted work," and § 301 preempts any state law that creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106." A claim for unauthorized using of Copyrighted Works falls squarely within the scope of the rights specified in §106, and the vast weight of authority holds that state law unfair competition claims that are really claims for

6

unauthorized copying are preempted. *See, e.g., Triangle Publications, Inc. v. Sports Eye, Inc.*, 415 F. Supp. 682, 686 (E.D. Pa. 1976)(state regulation of unfair competition is preempted as to matters falling within the broad confines of the copyright clause of the Constitution); *Freiman v. Seel*, C.A. No. 96-7282, 1997 WL 305935 (E.D. Pa. May 29, 1997)(misappropriation and unfair competition claims preempted); *see also* 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §1.01[B][1][f][iii] (1999) (citing cases). Therefore, paragraph 94(c) of the SAC is preempted.

Defendants also argue that paragraph 94(E) of the SAC which asserts an unlawful competition claim based on using NSI's trade secrets is preempted by the Pennsylvania Uniform Trade Practices Act ("PUTSA"). 12 Pa. Cons. Stat. Ann. § 5301, et seq. (2004). Courts in this district have held, however, that before the Court can consider whether a state law claim is preempted by the PUTSA, the Court should first determine whether the information actually constitutes a trade secret. *Youtie v. Macy's Retail Holding, Inc.*, 626 F. Supp. 2d 511 (E.D. Pa. 2009); *Cenveo Corp. v. Slater,* 2007 WL 527720, at *3 (E.D.Pa. Feb. 12, 2007). Accordingly, the Court will deny the motion to dismiss paragraph 94(E) as preempted by PUTSA until enough discovery has been completed for the Court to determine whether the information actually constitutes a trade secret.

Defendants also seek to dismiss the remainder of NSI's unlawful competition claim on the basis that none of the actions constitute a claim for unfair competition. Although Pennsylvania law traditionally defines unfair competition as the "passing off" of a rival's goods as one's own, thus creating confusion between one's own goods and the rival's goods, *Scanvec Amiable Ltd. v. Chang*, 80 Fed Appx. 171, 180 (3d Cir. 2003),

the doctrine of unfair competition in Pennsylvania has been extended to other types of conduct. *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995) "Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Sythes (U.S.A.) v. Globus Med., Inc.*, No. Civ.A.04-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005) (citations omitted).

The Pennsylvania common law tort of unfair competition is coextensive with the definition set forth in the Restatement (Third) of Unfair Competition. See *Bldg. Materials Corp. of Am. v. Rotter*, 535 F. Supp. 2d 518, 526 n.4 (E.D. Pa. 2008) (citations omitted); *ID Sec. Sys. Of Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003). Section 1 of the Restatement indicates that, "[a]s a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition." Restatement (Third) of Unfair Competition § 1 cmt. g. "Nevertheless, the term may not be construed 'as a virtual catch-all for any form of wrongful business conduct' or to 'include all forms of modern business torts.'" *Giordano v. Claudio*, 714 F. Supp. 2d 508, 521-22 (E.D. Pa. 2010) (quoting *USX Corp. v. Adriatic Ins.* Co., 99 F. Supp. 2d 593, 619 (W.D. Pa. 2000)). "The Pennsylvania Supreme Court has noted that in addition to the traditional scope of 'unfair competition' . . . the concept has been extended in some business settings to include misappropriation as well as misrepresentation." *Hill v. Best Med. Int'l, Inc.*, Nos. Civ.A.07-1709, 08-1404, 09-1194, 2011 WL 5082208, at *17 (W.D. Pa. Oct. 25, 2011)

(citing *Pottstown Daily News Publ'g Co. v. Pottstown Broad. Co*., 192 A.2d 657, 662 (Pa. 1963)).

As stated above, the remaining paragraphs of NSI's unfair competition claim are for encouraging consumer confusion using the Colosi name, using NSI identical vendors, such as Travel Time, using NSI's success statistics as though they were completed by VRS, using the same telephone number used by Defendant Colosi as the President of NSI to conduct business as VRS and using trade dress and marketing materials that look similar or identical to NSI's trade dress and marketing materials. Although these allegations of unfair competition would appear to fall outside of the parameters of the tort of unfair competition as established by the Restatement and Pennsylvania jurisprudence, given the early stages of these proceedings, the Court declines to dismiss these paragraphs of NSI's unlawful competition claim until discovery is completed.

Finally, Defendants seek to dismiss NSI's Count VIII claim against all defendants for intentional interference with prospective contractual relations**.**

Under Pennsylvania law, a cause of action for intentional interference with contractual relations has four elements: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *CGB OccupationalTherapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).

"In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized absent the defendant's interference." *Acumed LLC v. Advanced Surgical Servs.*, Inc., 561 F.3d 199, 213 (3d Cir. 2009) (citations omitted). "A 'reasonable likelihood' of occurrence is something less than a contractual right but more than a mere hope that there will be a future contract." *Id.* (citing *Phillips v. Selig*, 959 A.2d 420, 428 (Pa. Super. Ct. 2008)). Furthermore, a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship. *Id.*

NSI alleges in the Second Amended Complaint that it had a prospective contractual relationship with a third party, Yuma Regional Medical Center ("YRMC"). (SAC ¶ 97.) NSI further alleges that Defendants interfered with NSI's relationship with YRMC in order to harm NSI and for Defendants' own benefit. (SAC ¶ 98.) NSI further alleges an absence of privilege or justification on the part of Defendants and that NSI incurred damages, including lost profits. (SAC ¶ 99-100.) These allegations, although somewhat bare-boned, are enough to state a claim for intentional interference with prospective contractual relations.

In support of their argument that NSI has failed to state a claim for tortious interference, Defendants rely on an affidavit sworn to by Pollick. (ECF 37-2.) The Court reminds Defendants that they have filed a motion to dismiss, not a motion for summary judgment. After discovery is completed, Defendants may file a motion for summary judgment in which they can rely on the Pollick affidavit. At this stage of the proceedings,

the Court's review is limited to the allegations in the SAC and the Court finds that NSI has properly pleaded a claim for intentional interference with prospective contractual relations.