# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NSI NURSING SOLUTIONS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.    17-1613 |
| | : | |
| VOLUME RECRUITMENT SERVICES, LLC, et al. | : | |
| | : | |
| | : | |

## MEMORANDUM OPINION

**SCHMEHL, J.    /s/ JLS**                                    **FEBRUARY 4, 2019**


This copyright infringement action was originally commenced by Plaintiff on March 1, 2017 in the Court of Common Pleas of Lancaster County, then removed by Defendants to this Court. In its Second Amended Complaint, Plaintiff asserts counts for breach of fiduciary duty (Count I), breach of contract (Count II), tortious interference with contractual relations (Count III), copyright infringement (Count IV), misappropriation of trade secrets (Count V), false advertising (Count VI), unfair competition (Count VII), tortious interference with contractual relations (Count VIII) and civil conspiracy (Count IX). Presently before the Court is the defendants' motion for summary judgment. For the reasons that follow, the motion is granted in part and denied in part.[1]


## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some

---

[1] **In its response to Defendant's motion for summary judgment, Plaintiff has withdrawn Counts V and VIII.**

disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009)(quoting <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the non-moving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the non-moving party." <u>Pignataro v. Port Auth. of N.Y. and N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

When a party fails to respond to a properly filed motion, the Court may treat the motion as uncontested. E.D. Pa. Local R. Civ. P. 7.1(c). In the case of a motion for summary judgment, however, the Court "may not grant an uncontested summary judgment motion without an independent determination that the movant is entitled to judgment under Fed. R. Civ. P. 56." *B&B Fin. Servs. LLC v. Kallock*, No. CIV. A. No. 05-1277, 2006 WL 2869529, at *1 (E.D. Pa. Oct. 4, 2006); *see Hitchens v. County of Montgomery*, 98 Fed. App'x 106, 110 (3d Cir. 2004) (providing the same). Still, "[b]y failing to respond . . . 'the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion.'" *Kallock*, 2006 WL 2869529, at *1 (citing

*Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003)). Thus,

when a party fails to respond, the court may consider the facts stated in the motion for

summary judgment "undisputed for the purposes of the motion." *Goodwin v. Kope*, CIV. A.

No. 13-1290, 2016 WL 3087389, at *2 (E.D. Pa. June 2, 2016).

The parties have stipulated to the following facts:

1.      Plaintiff NSI Nursing Solutions, Inc. ("NSI") is a nationwide firm that focuses on high volume recruitment and retention of registered nurses for hospitals and healthcare systems.

2.      NSI is a Pennsylvania corporation with a place of business at 2055 East State Street, East Petersburg, Pennsylvania 17520.

3.      NSI was registered as a corporation with the Pennsylvania Department of State Corporations Bureau on September 21, 2000.

4.      NSI is a closely held entity, owned as follows:

   a.      Marc Colosi and Geraldine Colosi -20%;

   b.      The Marco Colosi Irrevocable Trust of 2004 -20%;

   c.      The Brian Colosi Irrevocable Trust of 2004 -20%

   d.      The Michael Colosi Irrevocable Trust of 2004 -20%; and

   e.      The Christopher Colosi Irrevocable Trust of 2004 -20%.

5.      Marc Colosi is the Chairman of the Board of NSL

6.      Brian Colosi is the President and Executive Vice President of Operations of NSL

7.	Michael Colosi is the Executive Vice President in charge of financial operations, sales and marketing at NSL

8.	Over the course of his career, Marc Colosi worked as a Human Resource executive at various healthcare institutions.

9.	In the late 1990's, after serving as the Vice President of Human Resources at Lancaster General Health, Marc Colosi formed a Human Resources consulting company.

8.	During the course of a consulting engagement for a healthcare system, the Vice President of Human Resources advised Marc Colosi of the organization's need for nurses.

9.	Defendant Debra Pollick and Marc Colosi became acquainted in the 1980's, when Ms. Pollick called on Albert Einstein, Bronx Lebanon Hospital to market recruiting services. Mr. Colosi was the Vice President of Human Resources at Albert Einstein at that time.

10.	Ms. Pollick and Marc Colosi formed a professional friendship and remained in contact over the years.

11.	In 2000, Marc Colosi contacted Ms. Pollick about an idea for a staffing and recruiting firm that focused on the volume recruitment and placement of nurses.

12.	Ms. Pollick became a shareholder of NSI and served as the company's Executive Vice President and Chief Operating Officer.

13.	Ms. Pollick resigned from NSI in 2003.

14.     Defendant Marco Colosi became involved in NSI in 2000, when he began assisting his father, Marc Colosi, with NSI business in the evenings.

15.     Marco Colosi became an employee of NSI in 2001, and served as the President of the company from 2005 to 2013.

16.     During his employment with NSI, Marco Colosi executed a non-competition agreement

17.     None of the parties has possession of the non-competition agreement that Marco Colosi signed.

18.     In 2009, during the recession, NSI experienced a financial downturn and laid off a number of employees.

19.     During the financial downturn, NSI's officers, Marco Colosi, Brian Colosi and Michael Colosi, received funds characterized as "Dividend Distributions" in lieu of W-2 wages.

20.     NSI's officers also applied for and received unemployment compensation benefits.

21.     Marco Colosi resigned from NSI on July 3, 2013.

22.     Defendant Volume Recruitment Services, LLC ("VRS") is a nationwide firm that focuses on high volume recruitment of registered nurses for hospitals and healthcare systems.

23.     VRS is a Pennsylvania limited liability company with a principal place of business at 2124 Marietta Avenue, Lancaster, Pennsylvania 17603.

24.     In August 2015, Marco Colosi designed the logo for VRS.

25.     During March 2016, Marco Colosi and Debra Pollick worked together to prepare a Profit and Loss Projection for VRS.

26.     During April 2016, Marco Colosi and Debra Pollick worked together to prepare VRS's contracts.

27.     VRS was registered as a limited liability company with Pennsylvania Department of State Corporations Bureau on June 9, 2016.

28.     Marco Colosi is a member and Chief Executive Officer of VRS.

29.     Debra Pollick is a member and Executive Vice President of VRS.

30.     On April 12, 2016, Marshall Jones, Vice President of Human Resources and Chief Listening Officer of Yuma Regional Medical Center ("YRMC") in Yuma Arizona, emailed Debra Pollick stating that he "discussed the 'mass recruiting idea with Bob and he likes it."

33.     On April 20, 2016, Michael Colosi was contacted by Randall Etzler, the Director of Human Resource Operations of YRMC.

34.     Mr. Etzler expressed that YRMC needed to fill 50-100 registered nurse positions by October 1, and asked Michael Colosi to provide a "quick and rough" estimate for the cost of NSI's services to perform the job.

35.     On April 25, 2016, Michael Colosi participated in a telephone call with Mr. Etzler and Beatrice Cain, a recruiter for YRMC, to discuss YRMC's needs, how many positions were to be filled, the departments for which the nurses were to be hired, NSI's program and how NSI would go about hiring the nurses.

36.     On April 26, 2016, Michael Colosi sent a draft contract for NSI's services to Mr. Etzler.

37.     The draft agreement provided that NSI would recruit 20 nurses for YRMC, and would be paid a $65,000 execution fee at the time of execution of the contract, and a $65,000 fee for each employee that accepted employment with YRMC.

38.     YRMC did not execute a contract with NSI.

39.     On July 22, 2016, VRS executed a contract with YRMC to recruit and place thirty-six (36) registered nurses.

40.     On August 22, 2016, VRS and YRMC executed a revised contract, pursuant to which VRS agreed to recruit and place forty-six (46) registered nurses on behalf of YRMC.

41.     On May 4, 2017, NSI submitted applications for copyright protection of the following documents ["the Copyrighted Works"] to the United States Copyright Office, for which Certificates of Registration have been issued:

> Campaign Results and Assessment Report (TX0008394451) – Date of Publication October 1, 2001;
>
> Client Checklist (TX0008394446) - Date of Publication August 1, 2002;
>
> a.     Confirmation Letter- Local (TX0008394324) – Date of Publication May 1, 2003;
>
> b.     Confirmation Letter - Travel (TX0008394328) - Date of Publication May 1, 2003;
>
> c.     Employee Feedback Report (TX0008394452) – Date of Publication March 1, 2003;
>
> f.     New Hire Information Sheet (TX0008566258) – Date of Publication March 1, 2003;

g. Recruitment Incentive Bonus Agreement (TX0008566269) – Date of Publication March 1, 2003;

h. Recruitment Incentive Bonus Agreement (TX0008566266) – Date of Publication April 1, 2001;

i. Recruitment Scorecard (TX0008394329) – Date of Publication March 1, 2011.

j. Rules of Engagement for an Attraction Hospital: Talent Loading, Landing, On-Boarding and Energizing (TX0008394453) – Date of Publication June 1, 2002;

k. Services Agreement (TX0008394325) – Date of Publication February 1, 2002.

l. U.S. Multiyear Nurse Recruitment Agreement (TX0008394311) – Date of Publication October 1, 2009;

m. U.S. Nurse Recruitment Agreement (TX0008394330) – Date of Publication June 1, 2009; and

n. NSI Website (TX0008394327) - Date of Publication January 1, 2008.

42. On May 18, 2017, NSI submitted applications for copyright protection of the following two documents to the United States Copyright Office, for which Certificates of Registration have been issued:

Recruiting Letter (TX0008398239) – Date of Publication September 1, 2002; and

Recruiting Postcard (TX0008398238) - Date of Publication June 1. 2006.

43. On May 22, 2017, NSI submitted applications for copyright protection of the following document to the United States Copyright Office, for which a

Certificate of Registration has been issued: Boomerang Letter (TX0008566261 ) –
Date of Publication September 1. 2002.

## **DISCUSSION**

In Count I of the Second Amended Complaint, NSI asserts a claim against defendant Marco Colosi for breach of fiduciary duty and duty of loyalty, alleging that Marco breached his fiduciary duty as President of NSI in the following ways: (1) maintaining copies of the Copyrighted Works for the purpose of competing with NSI; (2) maintaining copies of the Trade Secrets for the purpose of competing with NSI; and (3) removing or destroying executed copies of his Noncompetition and Confidentiality Agreement from NSI's files. (Doc.32, ¶¶ 55-58).

To prevail on a claim for breach of fiduciary duty, NSI must prove: "'(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's injuries.'" *Synthes, Inc. v. Emerge Med., Inc.,* 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014) (quoting *McDermott v. Party City Corp.,* 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998).

NSI first contends that Marco breached his fiduciary duty to NSI by maintaining copies of the Copyrighted Works. On the one hand, Michael Colosi testified that after Marco resigned, he helped Marco pack his belongings and carried some boxes out of Marco's office. (VRS's Exhibit H, p. 122). Michael did not observe Marco download anything to a thumb drive or email anything to himself. (*Id.*). During the discovery process,

NSI requested a forensic examination of Marco's personal computer and electronic storage devices. NSI identified over 70 search terms selected by its counsel to determine whether Marco retained possession of any NSI documents or information. The search terms proposed by NSI returned over 50,000 files, only two of which were related to the purported Copyrighted Works. Those documents include the YES_Post Campaign Report and YES_Post Hire Survey Report. Marco averred that although he initially considered using these two documents for VRS, neither document was ever actually used by VRS. (VRS's Exhibit U, ¶¶ 7-12).

On the other hand, the Court has compared each of NSI's Copyrighted Works to each of the corresponding alleged infringing documents from VRS and finds that VRS's documents are substantially the same, and in many cases, identical to the NSI documents. Unless either Marco or Debra Pollick have a photographic memory, a reasonable jury could draw the conclusion that Marco removed or maintained copies of the Copyrighted Works.

With respect to NSI's claim that Marco breached a fiduciary duty by keeping copies of NSI's Trade Secrets, the Court again notes that NSI has dropped its claim for misappropriation of trade secrets and, as a result, this claim is rendered moot

The Court finds there is circumstantial evidence in the record from which a jury could conclude that Marco removed or destroyed executed copies of his non-competition agreement from NSI's files. Although Marco testified that he did not sign a non-compete agreement in 2006, he did testify that he signed a non-competition agreement in January, 2001 and that he believed the non-competition period was for three years. (NSI's Exhibit *4* at pp. 62-63). Indeed, the parties have also stipulated that Marco signed a non-compete agreement. (SOF at ¶ 16).  Michael Colosi testified that Michael, Brian, Marc and Marco

all signed non-compete agreements. (VRS's Exhibit H, p. 141). He testified that he knew Marco had signed a non-compete because he saw Marco's non-compete when Marco made Michael sign his non-compete agreement. (VRS's Exhibit H, p. 142). Michael further testified that he was able to locate non-compete agreements in the active personnel files for Marc, Brain and Michael but not Marco. Michael kept the personnel files in an unlocked fire box in his office. (VRS's Exhibit H, pp. 142-143). Michael testified that Marco knew that the non-compete agreements were in the fire box in Michael's office. (VRFS's Exhibit H, p. 143). Michael and Brian both testified that they believe Marco took NSI's copy of his non-competition agreement because it was not in the fire box when Michael looked for it, and "[n]one of us would have done it." (VRS's Exhibit H, p. 143; Exhibit I, p. 231). When asked how he formed the belief that Marco took the agreement, Michael responded: "I'm giving you my belief." (VRS's Exhibit H, p. 144).

Although NSI has no direct evidence that Marco actually took the agreement or that he currently has possession of it, viewing the evidence in the light most favorable to NSI, a reasonable jury could conclude that since it was only Marco's non-compete agreement that was missing from the unlocked fire box to which Marco had access and that the only individual to benefit from the disappearance of Marco's non-compete agreement would be Marco, Marco could have removed his non-compete agreement. Therefore VRS's motion will be denied with respect to Count I.

In Count II of the Second Amended Complaint, NSI contends that Marco Colosi breached the terms of the non-compete agreement he signed by competing and preparing to compete with NSI before the expiration of the 36-month period and by stealing NSI's Copyrighted Works and Trade Secrets. (Doc. 32, ¶¶ 60-67).

A breach of contract claim under Pennsylvania law requires NSI to establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (quoting *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A. 2d 1269, 1272 (Pa. Super 2002).

Marco himself testified that he signed a non-competition agreement in January, 2001 and that he believed the non-competition period was for three years. (NSI's Exhibit *4* at pp. 62-63). The parties have stipulated that Marco resigned from NSI on July 3, 2013. (SOF, ¶ 23). Therefore, pursuant to the 2001 non-compete agreement that he testified he signed, Marco was restricted from engaging in any competing activities with NSI until approximately July 3, 2016. Yet, the parties have stipulated that in August 2015, Marco Colosi designed the logo for VRS; during March 2016, Marco Colosi and Debra Pollick worked together to prepare a Profit and Loss Projection for VRS; and that during April 2016, Marco Colosi and Debra Pollick worked together to prepare VRS's contracts. (SOF, ¶¶ 26-28). Based on this evidence, a reasonable jury could conclude that Marco violated the terms of his non-compete agreement as early as August of 2015 when he began to prepare and produce documents for VRS. Therefore, summary judgment will be denied as to Count II.

In Count III of the Second Amended Complaint, NSI asserts a claim against defendant Pollick for tortious interference with contractual relations, (Doc. 32, ¶¶ 68-72). Specifically, NSI contends that Pollick induced Marco to breach his non-competition agreement with NSI by joining with her to compete against VRS. (Doc. 32, ¶¶ 69-71).

To state a claim for tortious interference with contractual relations, a claimant must allege the existence of a contractual relation between the claimant and a third party;

purposeful action on the part of the defendant specifically intended to harm the existing relation; the absence of a privilege or justification for doing so; and, actual legal damage as a result of the defendant's conduct. See *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir.1998). The gravamen of the tort is intentional improper conduct "causing the third person not to perform the contract" with the claimant. *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978) (quoting Restatement (Second) of Torts§ 766), cert. denied, 442 U.S. 907 (1979).

The only evidence NSI cites in support of its tortious interference claim is the fact that Pollick litigated her own non-compete agreement with NSI in two prior cases in this district, *Pollick v. NSI Nursing Solutions*, 2:2003-cv-00662 (E.D. Pa. 2003); *NSI Nursing Solutions v. Pollick*, 2:2005-cv-00001 (E.D. Pa. 2005) and therefore she had reason to know that all NSI officers, including Marco, were subject to a non-compete agreement; an email from Pollick to Marco dated April 15, 2016 in which she wrote, *inter alia*, "I believe I can hold off Yuma Regional until July!" (NSI's Exhibit 7); and that as a former officer of NSI, she would have been aware when Marco disclosed documents that appeared strikingly similar to those used when Pollick was at NSI.

The Court finds, as a matter of law, that this evidence is not enough f\or a reasonable jury to conclude that Pollick took any purposeful action to specifically induce Marco to breach his non-compete with NSI. If anything, the fact that Pollick wrote to Marco that "I believe I can hold off Yuma Regional until July" is further evidence that Marco was well aware that his non-compete agreement prevented him from competing with NSI until July 3, 2016. In this regard the Court also notes an email from Pollick to Marco dated May 13, 2016, in which Pollick informed Marco that she had informed a potential client for VRS that " [t]hey have already been told it would be after July

**13**

5th…"(NSI's Exhibit 6). Since there is no evidence from which a jury could find that Pollick tortuously interfered with a non-competition agreement, judgment will be entered in favor of the defendants on Count III of the Second Amended Complaint.

In Count IV of the Second Amended Complaint, NSI asserts a claim against Marco, Ms. Pollick and VRS for copyright Infringement of each of the Copyrighted Works. (Doc. 32, ¶¶ 73-78). Ironically, NSI failed to register with the Copyright Office any of these 16 documents prior to filing this lawsuit. It was not until this action was removed to this Court and VRS filed a motion to dismiss that Plaintiff attempted to register the 16 documents in May, 2018. The Copyright Office ultimately issued Certificates of Registration for the 16 documents.

VRS argues that it is entitled to judgment on each of the 16 documents because NSI has failed to prove that any of the 16 copyrights are valid and, assuming *arguendo*, that any of the 16 copyrights are valid, that VRS infringed any of the 16 documents.

In the first instance, the Court notes that in its response to VRS's motion for summary judgment, NSI only contests VRS's arguments with respect to only six of the 16 copyrighted documents. (Doc. 72, pp. 13-18). Therefore, in the absence of a response by NSI, the Court will enter judgment on favor of VRS with respect to the following 10 documents: Boomerang Letter; Employee Feedback Report; New Hire Information Sheet; Recruiting Letter; Recruiting Postcard; Recruiting Incentive Bonus Agreement; Recruiting Incentive Bonus Agreement v2; Recruitment Scorecard; Rules of Engagement for an Attraction Hospital; and Services Agreement.

To establish a claim of copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of

the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). In considering these elements, the Court finds that there are genuine issues of material fact as to whether VRS has infringed the remaining six NSI works. Therefore, the motion for summary judgment will be denied as to the remaining six NSI works.

In Count VI of the Second Amended Complaint, NSI asserts a claim against all defendants for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125. (Doc. 32, ¶¶ 85-91). Specifically, NSI contends that Defendants have taken the following actions designed to cause confusion in the marketplace: encouraging consumer confusion using the Colosi name; using NSI's Copyrighted Works; using NSI's success statistics as though they were completed by VRS, using NSI's trade secrets, using the same telephone number used by Marco Colosi when he was the President of NSI to conduct business as VRS, (Doc. 32, ¶ 89).

Section 1125(a)(1)(B) of the Lanham Act forbids "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B).

In order to establish a false advertising claim under the Lanham Act, NSI must show: 1) that VRS has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is

material in that it is likely to influence purchasing decisions; 4) that the advertised

goods traveled in interstate commerce; and 5) that there is a likelihood of injury to

the plaintiff in terms of declining sales, loss of good will, etc. *Warner-Lambert Co.*

*v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000).

The problem with NSI's false advertising claim is that the record is completely

devoid of any type of NSI commercial advertisement or promotion, let alone one that that

"misrepresents the nature, characteristics, qualities, or geographic origin of his or her or

another person's goods, services, or commercial activities[.]" NSI has failed to identify a

single document that VRS uses to advertise or promote its goods and services to

prospective healthcare agents. Although VRS does advertise available jobs with VRS's

clients, such marketing efforts do not constitute the advertisement of its goods and

services.

With respect to the first allegation, there is nothing false or misleading about Marco

using the Colosi name since he is a member of the Colosi family who all share the same

last name. Nor is it false or misleading for Marco to continue to use the same phone

number he has used prior to his employment with NSI. The record reveals that in the five

years since Marco left NSI, he has only received one telephone call from an individual

trying to reach his father. (VRS's Exhibit G, pp. 260-261). Marco testified that he referred

that particular caller to Colossi Sr. (VRS's Exhibit H, p. 120).

With respect to NSI's allegation that defendants violated the Lanham Act by using

NSI's purported copyrights, the law is clear that NSI may not assert a claim for copyright

infringement under the Lanham Act. "Section 301(a) of the Copyright Act preempts

all claims that may arise under state common law or other statutory grounds." *Conference*

*Archives, Inc. v. Sound Images, Inc.,* No. 3:2006-76, 2010 WL 1626072 at \*12 (W.D. Pa. Mar. 31, 2010).

Similarly, the Lanham Act does not support a cause of action for misappropriation of trade secrets. *BP Chems., Ltd. v. Jiangsu Sopo Corp. Ltd.*, 429 F. Supp. 2d 1179, 1189 (E.D. Mo. 2006).

Finally, the undisputed record shows that VRS has never used NSI's success statistics in its advertising plans as Debra Pollick specifically testified that VRS did not provide success statistics to its first client, YRMC. (VRS's Exhibit D, pp. 129-130).Therefore judgment will be granted in favor of VRS on NSI's Lanham Act claim.

In Count VII, NSI asserts a claim against VRS for unfair competition. Since NSI did not respond to VRS' arguments why it is entitled to summary judgment on this claim, judgment will be entered in favor of VRS on Count VII.

Finally, in Count IX, NSI has asserted a claim against all defendants for civil conspiracy.  NSI claims that the defendants engaged in a conspiracy to unfairly compete with NSI, including the misappropriation of confidential materials from NSI and by using unfair trade practices, (Doc. 32, ¶¶ 102-104).

To prove civil conspiracy under Pennsylvania law, a plaintiff must establish the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 536 A.2d 1337,

1342 (Pa. Super. Ct. 1987); *see also Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs.*, No. 08-2926, 2010 WL 2470992, at *5 (E.D. Pa. June 14, 2010) (same); *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (same).

Based on the Court's review of the record, the Court concludes that there is no evidence from which a reasonable jury could conclude that defendants conspired to commit the acts alleged in the Second Amended Complaint . Therefore, judgment will be entered in favor of VRS on Count IX.